UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOSES KEON WILLIAMS,

      Plaintiff,                        Case No. 2:21-cv-11631
                                      District Judge Sean F. Cox
v.                              Magistrate Judge Kimberly G. Altman

CHARLES JAMSEN
and NATALIA STOKELY-HAMDAN,

      Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 38)[1]

I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff Moses Keon Williams (Williams), proceeding *pro se*, is suing three defendants, Charles Jamsen, M.D. (Dr. Jamsen), Sirena Landfair (Landfair), and Nurse Practitioner Natalya Stokely-Hamdan (Stokely-Hamdan), challenging the adequacy of the medical care he received while incarcerated.  *See* ECF No. 1.  Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned.  (ECF No. 14).  Landfair has been dismissed for failure to state a claim, (ECF Nos. 35, 36), leaving

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Dr. Jamsen and Stokely-Hamdan as the remaining defendants.

Before the Court is Dr. Jamsen and Stokely-Hamdan's motion for summary judgment on the grounds that Williams has not exhausted his administrative remedies and that his deliberate indifference claim is insufficient to survive summary judgment.  (ECF No. 38).  For the reasons that follow, the undersigned RECOMMENDS that the motion be DENIED.

## II.    Background

The following facts are gleaned from the medical records provided by the parties, the sworn affidavits of Dr. Jamsen and Stokely-Hamdan, and the signed declaration from Williams.

On or about July 5, 2018, Williams was transported from G. Robert Cotton Correction Facility (JCF) to Henry Ford Allegiance Hospital in Jackson, Michigan to undergo exploratory testicular surgery by Tony Pinson, M.D. (Dr. Pinson). (Williams' Sealed Medical Record, ECF No. 39, PageID.335-336).  The purpose of the surgery was to explore a "palpable mass associated with the upper right hemiscrotum associated with the upper right testicle and cord."  (*Id*.).

During the procedure, Dr. Pinson noted that the technical appearance of the right testicle was within normal limits and that it also felt within normal limits. (*Id*.).  An enlarged epididymis was noted, but this also appeared to be within normal limits.  (*Id*.).  No abdomen allergies were noted, and there were no

significant varices found along the cord.  (*Id*.).  After making these findings, Dr. Pinson elected to do no further intervention, and placed the cord and testicle back into their normal anatomical positions and closed the incision.  (*Id*.).

A dressing was applied, and Williams was transferred to the recovery room in stable condition.  (*Id*.).  Williams was prescribed both an antibiotic, cephalexin (Keflex), and a painkiller, hydrocodone-acetaminophen (Norco), and discharged that day with instructions to remove his dressing in 48 hours, remove the "steri strips" in seven to ten days, and to administer an ice pack to the region for 48 to 72 hours.  (*Id*., PageID.337).

Upon returning to JCF that day, Williams was seen by James Johnston, R.N., who noted that Williams declined Motrin and Ultram for pain due to a history of kidney problems.[2]  (*Id*., PageID.344-348).

The next day, July 6, 2018, Williams was seen by Victoria Hallet, D.O. (Dr. Hallet), who noted that Williams told her that his testicular mass was determined to be a severe varicocele and abnormal epididymis, but that no orchiectomy was performed as the urologist was not concerned about cancer.  (*Id*., PageID.349-353).

---

[2] The undersigned notes that these are different drugs than the hydrocodone-acetaminophen recommended by Dr. Pinson, and that some sources state that acetaminophen is the safest choice for kidney health.  *See*, *e.g.*, https://www.kidney.org/atoz/content/painmeds_analgesics ("Acetaminophen remains the drug of choice for occasional use in patients with kidney disease . . .") (last accessed on December 13, 2022).

Dr. Hallet also noted that "[d]ue to renal function, [Williams] eschews pain medications." (*Id.*). She stated that Williams' gait was slow and measured due to groin pain post-surgery, and ordered a nurse visit on July 8, 2018, to remove his dressing, a nurse visit on July 13, 2018, to remove the steri strips, and a provider visit on July 13, 2018, for evaluation and to "consider need for urology follow up." (*Id.*).

On July 10, 2018, while in segregation for fighting with another inmate, Williams was seen by Dr. Jamsen. (*Id.*, PageID.354-355). Williams complained of shaking and feeling cold since the previous day, heart fluttering, and having anxiety due to the heat and closed spaces. (*Id.*). Dr. Jamsen examined him, including his abdomen and genitourinary regions, noting tenderness to the abdomen and right side of the scrotum, but an otherwise normal scrotum with no masses. (*Id.*). Dr. Jamsen concluded that there were no issues with the surgical site and that his other complaints were likely related to anxiety. (*Id.*).

The medical record then reflects "no shows" for scheduled visits on July 12 and 13, 2018, for dressing change and steri strip removal, respectively. (*Id.*, PageID.356-357).

Williams states that during his visit with Dr. Jamsen in his segregation cell, he "forced" Dr. Jamsen to examine his scrotum and surgical area, explaining that he was not anxious, "but fearful of [his] worsening condition and physically ill."

(ECF No. 43, PageID.391).  He told Dr. Jamsen that he had not received his prescribed pain medication or antibiotics and asked him to ensure that he would receive them.  (*Id*.).  He also verified with Dr. Jamsen that he needed a dressing change and steri strip removal and that Dr. Jamsen agreed.  (*Id*.).

Williams wanted Dr. Jamsen to ensure that Williams' detention in segregation would not prevent his dressing change or steri strip removal "like it had prevented [him] from receiving [his] post-op medications."  (*Id*.).  Williams says that he did not receive itineraries in segregation and had no notice or control of his scheduled healthcare visits.  (*Id*.).  He further states that "there is an unspoken rule that when a prisoner goes to [segregation], all scheduled healthcare appointments, no matter how urgent, get disregarded and healthcare logs the missed appointments as no-shows and the prisoner is thereby forced to wait until he is released to seek medical attention."  (*Id*.).  Williams also states that Dr. Jamsen blamed Williams for his lack of post-operative treatment due to being in segregation for fighting, even though the fight that led to his segregation occurred three days before his surgery.  (*Id*.).

On July 23, 2018, Williams filed a kite[3] complaining of pain in the area of

---

[3] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance.  *See*, *e.g*., *Meirs v. Ottawa Cnty*., 821 F. App'x 445, 448 (6th Cir. 2020).

his surgery, stating that it felt swollen and like there was a large "extra" mass that was very painful. (ECF No. 39, PageID.358). The kite stated that it hurt Williams to sit, walk, or lay, and that the pain was worse than before the surgery. (*Id*.). Williams filed another kite on July 30, 2018, complaining of "not receiving adequate health care for testicle swelling, gastric and sinus issues.. haven't seen anyone and my issues are being ignored." (*Id*., PageID.359). The complaint was noted and Williams was instructed to watch his callout for appointment times. (*Id*.).

On August 2, 2018, Williams was seen by Stokely-Hamdan in response to his kite requests. (*Id*., PageID.360-363). Stokely-Hamdan noted Williams' complaint of testicular swelling, discomfort with walking, and pain with erection. (*Id*.). Upon examination, Stokely-Hamdan noted testicular edema with a tender texture and stated that she would obtain Williams' paper chart, review the notes from surgery, and consider a follow-up with urology. (*Id*.; Stokely-Hamdan's Affidavit, ECF No. 42, PageID.372). According to Williams, he also complained to Stokely-Hamdan about not receiving his Norco or any other pain medications, or his antibiotics, in a month. (ECF No. 43, PageID.391). He further states that he informed Stokely-Hamdan that he was suffering "severe pain and nausea" and weight-loss, and "begged her to do anything," but she said that she was "off the clock" and did not provide him with additional help or medications. (*Id*.).

On August 4, 2018, Williams saw another nurse, complaining that he thought his testicle was infected and that he needed to be sent to the hospital. (ECF No. 39, PageID.364).  That nurse examined him and found that his right testicle was slightly swollen, noting that he was "in no apparent distress" but seemed "demanding, posturing[,]" and "[k]eeps saying he needs to go to the hospital." (*Id*.).  She then spoke to Stokely-Hamdan, who in her medical judgment determined that he did not need to be sent to the hospital and could be treated with over-the-counter pain medication.  (*Id*.; ECF No. 42, PageID.372-373).  Williams was given Ibuprofen but was unhappy that he was not being sent to the hospital; he would not leave the office and was eventually made to leave by the lieutenant and corrections officer present.  (ECF No. 39, PageID.364).

According to Williams, he encountered Dr. Jamsen on August 13, 2018, while walking and having obvious difficulty doing so, with apparent pain and weight-loss, and pleaded with Dr. Jamsen to be treated or hospitalized, "but [Dr. Jamsen] just walked away."  (ECF No. 43, PageID.391).

Three days after the encounter with Dr. Jamsen, on August 16, 2018, Williams was transferred to the Oaks Correctional Facility (ECF) in Manistee Township, Michigan.  (*Id*., PageID.366-367).  According to Stokely-Hamdan, the transfer occurred "prior to [her] having an opportunity to obtain and review [Williams'] paper chart and to follow up on his complaints."  (ECF No. 42,

PageID.373).

Post-transfer records provided by Williams reveal that on August 17, 2018 – one day after his transfer – Williams was admitted to the Munson Healthcare Manistee Hospital where an ultrasound showed a "large right hydrocele[,]" suggesting "right epididymo[-]orchitis."[4]  (ECF No. 43, PageID.395).  On August 20, 2018, Williams was seen by a doctor at ECF who prescribed a ceftriaxone injection[5]  and provided Williams with a scrotal support.  (*Id*., PageID.396-397). The doctor saw Williams again on August 22, 2018, noting improvement in Williams' scrotal tenderness, and again on August 27, 2018, noting an increase in pain and swelling despite treatment with ciprofloxacin and ceftriaxone.  (*Id*., PageID.398-400).

Williams filed the instant complaint on May 20, 2021, alleging deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.  (ECF No. 1).  On June 27, 2022, Dr. Jamsen and Stokely-Hamdan filed a motion for summary judgment, which is now before the Court.  (ECF No. 38).

---

[4] Epididymo-orchitis is "an inflammation of the coiled tube (epididymis) at the back of the testicle that stores and carries sperm[,]" most often the result of a bacterial infection.  https://www.mayoclinic.org/diseases-conditions/orchitis/ symptoms-causes/syc-20375860 (last accessed December 13, 2022).

[5] Ceftriaxone injections are "used to treat bacterial infections in many different parts of the body[,]" and can be given "before certain types of surgery to prevent infections."  https://www.mayoclinic.org/drugs-supplements/ceftriaxone-injection-route/description/drg-20073123 (last accessed December 13, 2022).

They argue that Williams did not exhaust his administrative remedies through the Michigan Department of Corrections (MDOC) before filing suit, and also that his deliberate indifference claim fails on the merits. Williams responds that his grievance was improperly rejected and therefore exhausted his claims, and that he has demonstrated a sufficiently serious medical need that was disregarded by Defendants.

### III.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").

"Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Williams is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV.    Analysis

### A.    Exhaustion of Administrative Remedies

#### 1.    Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the

issues on the merits)." *Woodford*, 548 U.S. at 91 (internal quotation marks and citation omitted and emphasis in original).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so."  *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances.  "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all

11

those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94.  To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Specifically, under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC Policy Directive 03.02.130(R) (underscoring omitted).

### 2.  Application

Defendants do not dispute that Williams filed a grievance pertaining to the events described in the complaint.  Williams' applicable grievance states that after his surgery on July 5, 2016, he "did not receive [a] call-out from either Dr.

Jameson (sic) or Ms. Stokely[-Hamdan] (the nurse practitioner assigned to manage the day to day, annuals, and follow-ups etc) to examine my condition/recovery and check for infections etc." (ECF No. 38-5, PageID.325). It goes on to state that "[i]t was not until Dr. Jameson (sic) was emergency paged to come and assess anxiety attack and breathing issue (sinus and asthma related) I was having in segregation that he examined my very enlarged right testicle area with his naked eye and sense of touch to feel the area (that was approx. 1 ½ weeks to 2 weeks after surgery)." (*Id*.). The grievance describes Dr. Jamsen's conclusion that the swelling and soreness should decrease in a couple of weeks, which made sense to Williams because "other than make an incision in my groin area to enter into my scrotum sack, nothing was cut, removed, or opened." (*Id*.). Williams then describes in the grievance what the surgeon told him regarding his surgery. (*Id*.).

> Williams received the following response to his grievance at Step I: Your grievance is being returned to you without processing for the reason that you are in violation of PD-03.02.130. This procedure states that you must limit your grievance to one (1) issue per grievance. You have included more than one (1) issue as prescribed in this procedure.

(*Id*., PageID.326).

At Step II, the rejection for containing "multiple issues" was upheld. (*Id*., PageID.324). At Step III, which is the final step, the rejection was once again upheld. (*Id*., PageID.322).

Defendants argue that according to MDOC's grievance policy, a grievance

13

may be rejected if it is "vague, illegible, contains *multiple unrelated issues*, or raises issues that are duplicative of those raised in another grievance filed by the grievant." (ECF No. 38, PageID.263) (emphasis added). Thus, the argument goes, because the grievance was rejected for procedural reasons, Williams' claims are unexhausted under applicable caselaw.

Not so. While it is true that a grievance must follow the MDOC's procedural rules to satisfy the exhaustion requirement, "the Court is not required to blindly accept the state's application of the procedural rule[s]." *Reeves v. Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), *report and recommendation adopted in relevant part*, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012). Defendants offer no argument that Williams' grievance was properly rejected. Williams, however, argues that while his grievance was rejected for containing multiple issues, the regulation only bars grievances that contain multiple *unrelated* issues, and his grievance contained only *related* issues. In reply, Defendants offer no rebuttal to this argument.

Defendants' lack of argument on the propriety of the rejection constitutes waiver of their exhaustion argument. *See Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived."). But the undersigned also finds that, as a matter of law, Williams' grievance did not raise multiple unrelated issues. *See LaFountain v.*

14

*Martin*, 334 F. App'x 738, 741 (6th Cir. 2009) (finding that prisoner grievance did

not raise "multiple unrelated issues," as grievance coordinator stated, but in fact

raised one claim involving retaliation for grievance-filing).  Williams' grievance is

comparable to that considered in *Cheatham v. Haye*, No. 2:19-CV-10480, 2020

WL 3481645 (E.D. Mich. June 26, 2020).  There, the plaintiff grieved that,

following the surgical removal of three teeth, the defendants were responsible for

him not receiving the required soft food diet, and also that one of the defendants

denied him his prescribed pain medication while he was recovering from surgery.

*Cheatham*, at *4.  This grievance was rejected for containing multiple unrelated

issues, but the court found that "it raise[d] one claim, namely, that [the plaintiff]

was denied prescribed care in the wake of his oral surgery."  *Id*.

While not a model of clarity, Williams' grievance contains issues relating to

only one topic: his lack of adequate treatment for his post-surgical symptoms.

"[A] grievant need only 'object intelligibly to some asserted shortcoming' and

need not 'lay out facts, articulate legal theories, or demand particular relief' " to

exhaust his claims.  *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) (quoting

*Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002)), *abrogated on other grounds*

*by Jones v. Bock*, *supra*.  Here, it is telling that Williams' grievance rejection was

for asserting "multiple issues" and not "multiple *unrelated* issues," because the

issues Williams complains of therein are clearly related.  For this reason,

Defendants' motion for summary judgment on the basis of exhaustion should be denied.

### B.    Deliberate Indifference to Serious Medical Needs

#### 1.    Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Prison officials may not act with deliberate indifference to the medical needs of their prisoners.  *Id*. at 104.  An Eighth Amendment claim has two components, one objective and the other subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' "  *Farmer*, 273 F.3d at 834.  In *Farmer*, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id*. at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Comstock*, 273 F.3d at 702.

#### 2.    Application

16

In their motion, Defendants briefly summarize the treatment Williams received at JCF and argue that he was "treated appropriately for his testicular health concerns." (ECF No. 38, PageID.263-264). In their reply, they expand on this, noting that as to Dr. Jamsen, he only saw Williams once, with his examination revealing a normal scrotum with no masses or tenderness. (ECF No. 45, PageID.410). While the medical record does state that there were no masses, it also states that Williams had "[t]enderness to palpation R side of scrotum" as well as tenderness to palpation of the abdomen. (ECF No. 39, PageID.355).

Defendants also argue that Williams was provided Amoxicillin and ice and turned down pain medications, and that he was scheduled for dressing changes and steri strip removals but failed to show up to these appointments. They do not address Williams' declaration that he encountered Dr. Jamsen on August 13, 2018, while exhibiting obvious signs of a serious medical need and was ignored.

As to Stokely-Hamdan, Defendants argue that she properly treated Williams by ordering his chart to review in order to assist her in determining whether he needed a follow-up with a urologist, and because he received pain medication ("four packets of ibuprofen") from a different nurse during a visit two days later. (ECF No. 45, PageID.412-413). At that visit, the nurse contacted Stokely-Hamdan, who in her medical judgment determined that he did not need to be sent to the hospital and could be treated with over-the-counter pain medication. (ECF

No. 42, PageID.372-373).  Defendants also argue that "the fact that Mr. Williams was later sent to the hospital after his transfer to ECF on August 17, 2018, is not evidence that NP Stokely-Hamdan was deliberately indifferent to his serious medical needs[,]" citing *Phillips v. Tangilag*, 14 F. 4th 524, 536 (6th Cir. 2021) ("[the plaintiff] needed to present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so.").

In *Phillips*, "the Sixth Circuit determined that the plaintiff inmate could not 'rely on his serious medical needs alone to establish the objective element of his deliberate-indifference claim' where the evidence showed that he 'received extensive care.' " *Ashley v. Boayue*, No. CV 19-10484, 2021 WL 5911212, at *7 (E.D. Mich. Nov. 22, 2021), *report and recommendation adopted*, 2021 WL 5907927 (E.D. Mich. Dec. 14, 2021) (quoting *Phillips*, 14 F.4th at 536).  "The Sixth Circuit held that because the plaintiff's claim 'challenges the adequacy of this undisputed care, he must show that the doctors provided grossly incompetent treatment.' " *Id.* (quoting *Phillips*, 14 F.4th at 536).

However, a month before *Phillips* was decided, the Sixth Circuit stated that "in cases where the medical need is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention, the plaintiff need not present verifying medical evidence to show that, *even after receiving the delayed*

18

*necessary treatment*, his medical condition worsened or deteriorated.' " *Burwell v. Lansing*, 7 F.4th 456, 463 (6th Cir. 2021) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d at 899-900 (internal quotation omitted)) (emphasis added). "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id*. (quoting *Blackmore*, 390 F.3d at 900).

Here, Williams has presented a signed declaration in which he states that he was denied pain medication after being discharged to JCF from the hospital while exhibiting symptoms of distress that would be obvious even to a layperson, and that this denial continued even after being seen by Dr. Jamsen and Stokely-Hamdan. He also attests that he was denied medical care while in segregation.

Defendants, in turn, argue that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). While this quote is undoubtedly correct, it is inapplicable here.

Even though the medical records indicate that Williams denied certain kinds of pain medications and was a "no-show" to appointments while in segregation, Williams has presented a triable issue of fact on those issues for a jury to decide. The record does not conflict with Williams' statements that he did not receive the

pain medication he was prescribed or that he was unable to be treated properly while in segregation.

Furthermore, his delay in being treated is not "a mere disagreement with medical judgment [that would be] insufficient to establish deliberate indifference." *Vartinelli v. Cady*, No. 07-12388, 2009 WL 3180724, at *9 (E.D. Mich. Sept. 25, 2009) (citing *Estelle*, 429 U.S. at 105-107). Instead, he undersigned finds that the uncontroverted evidence that Williams was immediately hospitalized after being transferred to a different correctional institution constitutes evidence that a jury could consider in evaluating his deliberate indifference claim. Though Williams does not provide medical expert testimony that his treatment was "grossly incompetent," *Phillips* at 536, he has shown an obvious medical need that satisfies the objective prong of the deliberate indifference test without such evidence, *Burwell* at 463; *Blackmore* at 899-900.

The Sixth Circuit does not strictly require expert testimony to satisfy the objective prong, even if it "typically" (*Phillips* at 535), "often" (*Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)), or "may" (*Id*. (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017))) be required. Here, the effect of Williams' delay in treatment is apparent through the medical records and Williams' declaration. Thus, Dr. Jamsen and Stokely-Hamdan's motion for

summary judgment should be denied.[6]

V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that

Defendants' motion for summary judgment, (ECF No. 38), be DENIED.

Dated: December 21, 2022                    s/Kimberly G. Altman
Detroit, Michigan                           KIMBERLY G. ALTMAN
                                            United States Magistrate Judge

<b><u>NOTICE TO PARTIES REGARDING OBJECTIONS</u></b>

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

---

[6] Dr. Jamsen and Stokely-Hamdan do not argue that Williams failed to meet the
subjective prong of the deliberate indifference test.

21

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 21, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager